IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DORA MCNEIL                                                                                          PLAINTIFF

v.                                               No. 4:03CV00650 GH

JOSE ABISID, M.D., P.A.                                                                       DEFENDANT

**<u>ORDER</u>**

On February 9, 2004, the administrative record was filed in this ERISA case seeking review of plaintiff's claim for pension benefits after her termination from employment in April of 2002.[1] The Court agreed that certain documents that defendant had tendered as part of the administrative record should tentatively be considered as part of the record as the parties dispute the extent to which those documents were part of the claim process and the Court was unwilling to conclusively decide that issue in a vacuum. The Court continued that the better course was to consider those documents as part of the record so that the parties could address their effect, if any, on the claim process.

Plaintiff filed her brief on September 27th and defendant filed his brief on October 13th. On December 3rd, plaintiff filed a reply brief. Defendant filed a supplemental brief in reply on December 21st.

Plaintiff argues that the documents tendered by defendant are not part of the claims process as they were not provided to plaintiff or considered by the Plan during the pendency of the claim.

---

[1]Both parties agree that plaintiff is entitled to pension benefits; however, they dispute the amount that she is due.

She continues that she followed the formal claim process in accordance with the Plan and has never been provided with any explanation for the basis of any calculation that would lead to the number arrived by the Plan Administrator in contrast with the detailed basis of the claim and reasons for the amount sought provided by plaintiff. Plaintiff asserts that the Court should review the Plan's decision *de novo* as the Administrator failed to present evidence as to why benefits claimed were not properly computed and there are procedural irregularities such as her claim being rejected out of hand when admittedly plaintiff was entitled to something, and no analysis of benefits was provided. She argues, in the alternative, that even if the abuse of discretion standard is applied, she should still prevail as the Administrator provided no reasonable explanation to plaintiff or substantial evidence to justify its decision.

Plaintiff relates the facts that a claim was submitted by plaintiff through her attorney via certified mail to the claim administrator on October 25, 2002 proving in detail the basis for the claim and the reasons for the amount sought with references to the plan document and the applicable Code section, but the claim was denied without explanation and a timely appeal was filed on December 3, 2002. She continues that her counsel sent a letter of January 3, 2003 requesting a hearing and a written statement of the reasons for denial of the claim, but the administrator did not comply so a February 17, 2003 letter was written giving the administrator another chance to resolve the dispute. Plaintiff asserts that the plan's counsel did respond after the 60-day period but did not address the benefits or how they were to be computed so that her counsel again wrote on March 13, 2003 before finally filing suit.

Plaintiff states that the amount of her claim is based on the clear language of the plan with regard to her age, the 21.5% benefit formula, that she was 100% vested, the proper annuity purchase

rate, and that she had not exceeded her §145 limit, but the plan administrator never challenged any of the bases for the benefit calculation. She asks for a lump sum benefit of $58,887 plus 5% interest from July 6, 2002 as well as attorney's fees.

Defendant counters that it acknowledged from the outset plaintiff's status as a plan participant and her right to certain benefits, that defendant quantified precisely the accrued benefits and informed her of the actions necessary to receive the benefits, but her attorneys disputed the calculation and claimed a right to additional sums which was denied administratively. It contends that the only issue if whether defendant's interpretation of the plan provisions is reasonable.

Defendants argues that there was no procedural irregularity. It states that her claim for retirement benefits was initiated almost immediately after she was terminated in April of 2002 by another attorney to which the attorney for the plan responded in a comprehensive four-page analysis of the application of the plan and the benefits that would accrue and any mistake regarding her date of birth was corrected and was of no significance in the determination of the benefits due which was $19,770. Thereafter, plaintiff made a formal written claim and correspondence continued until plaintiff's new counsel submitted another written claim in October of 2002. Defendant asserts that it had already explained its interpretation of the plan and its methodology and repeated that in a November 26, 2002 letter to plaintiff and her attorney. It continues that plaintiff took the position that the claim had been denied for failure to provide a written decision while defendant stated that the basis for the calculation had previously been supplied in exhaustive detail so the abuse of discretion standard of review still applies.

Defendant maintains that its interpretation of the plan is reasonable as it is consistent with the plan goals in objecting to plaintiff's inflated calculation of her benefits which would reduce the

benefits for other participants and which is really not an adverse benefit determination since defendant provided plaintiff with the first set of distribution forms within 60 days of her termination and while plaintiff elected a lump sum payment she added language that she did not agree with the amount. The interpretation does not render any of the plan's language internally inconsistent or meaningless as the Item 28 of the Adoption Agreement states that "the current benefit formula will provide a benefit payable at normal retirement age calculated in accordance with Section 5.2 of the Plan equal to 15.70% of the average annual compensation" and not the 21.5% formula asserted by plaintiff.

It continues that its interpretation does not conflict with ERISA's requirements in computing plaintiff's accrued benefit under the terms of the plan, using the same benefit formula as stated in the plan and as utilized for purposes of funding the plan as of the most recent actuarial calculation. Defendant states that it has paid other terminated participant their vested accrued benefits under the plan using the exact same method, that plaintiff has accrued a benefit after five years of employment equal to $20,1000 as of the date of termination of which she was 80% vested without contribution by her and defendant provided her with all paperwork for her to be paid in full notwithstanding she was only 80% vested. Finally, defendant declares that the interpretation is not contrary to the plan's clear language as the same formula for calculating benefits was used as the plan used for funding purposes. Defendant suggests that attorney's fees should not be an issue, and, even if the Court were to award benefits, none of the factors for fees weighs in her favor.

Plaintiff replied that defendant still has not pointed to anything in the record to provide the Court with any explanation for the basis for any calculation leading to the number suggested by defendant. She takes issue with the additional documents that the May 2002 letter was not a claim

which was only submitted in October of 2002 when she followed the formal claim process and she never received any explanation of how the benefits were calculated.

Turning to the reasonableness of the plan's interpretation, plaintiff contends that the plan's argument that the benefit formula was 15.7% is incorrect as the plan was amended on December 31, 1997 to provide a 21,5% benefit formula and in 2001, the plan was amended and restated to include language mandated by several acts collectively known as "GUST" so she accrued a benefit under the plan based on the 21.5% formula for the years 1997 to 2001 which cannot be taken by retroactively amending the plan to a lesser benefit percentage. Plaintiff asserts that as defendant never offered any explanation as to why her 21.5% calculation was improper, the plan should not be allowed to now argue that it was wrong. She continues that the plan's own documents also show that she was 100% vested by her six years of service so the assertion that she was not 100% vested is clearly not reasonable.

The final reply filed by defendant on December 21st states that the parties arrived at different amounts based on different interpretations of the plan language. Defendant states that it used the same pension lawyer who drafted the plan and calculated the contribution each year of the plan's existence to calculate plaintiff's benefit, it presented plaintiff with a complete copy of the plan containing the formula, her attorney closely followed that formula but used the incorrect normal retirement benefit percentage, that the documents show that the benefit percentage which applied in 1997 had been changed in 1998 and each year thereafter which plaintiff chose to ignore, and there is no requirement that a step by step analysis of how a benefit calculation is made must be provided.

It maintains that plaintiff made a request for an immediate distribution of her benefits in May 2002 and defendant responded immediately explaining what her benefits were and how they were

calculated and those documents were not generated after the denial of the claim and after the filing of the lawsuit. Defendant then reviews the series of correspondence including its attorneys's response for a requested for additional information regarding the benefit calculation.

Defendant explains the benefit formula as follows:

The Plaintiff alleges that the benefit formula under the plan is not 15.7%, although that is the benefit formula which is included on page one (1) of the Summary Description of the Plan (A086), on page six (6) of the Adoption Agreement (A141) and on the upper left-hand corner of the accounts and allocations worksheet for 2001. Under Section 1.45 on page 8 of the Plan (A015) Normal Retirement Benefit is defined as "a straight life annuity commencing at a Participant's Normal Retirement Age and determined pursuant to the benefit formula specified in the Adoption Agreement." Under Section 5.2 on page 21 of the Plan it states "For each Plan Year the following calculation shall be made and the actual Accrued Benefit determined as of the valuation date thereof with respect to each Participant or Former Participant (or his beneficiary) who is eligible to receive a benefit of any type from this plan, as follows," and then it lists eleven (11) items or steps which are necessary to make the calculation of each Participant's hypothetical account balance. Item two (2) from that list is "Normal Retirement Benefit" which is defined in Section 1.45 of the Plan. Item three (3) from that list is "Capital Equivalent" which is defined as "Fund needed at Normal Retirement Age to provide Normal Retirement Benefit as determined from the annuity purchase rates and other actuarial assumptions used under the Plan." Item seven (7) of this list is "Pension Account after Contribution" which is defined as "(4) minus (6), added to (5). A percentage of this amount is the Participant's "vested interest" during the next plan year. Thus, each Participant has a hypothetical "account balance" under the plan which is calculated each year based upon the actuarial assumptions and the normal retirement benefit formula under the plan for that given year. This hypothetical account balance is then carried forward to the next year. Because of this calculation, which provides an actual present value amount for each year of each participant's accrued benefit under the plan, it is possible for the employer to amend the plan on a yearly basis, if desired, without <u>ever</u> reducing, decreasing, or otherwise "taking away" any participant's accrued benefit for the prior year. Therefore, the anti-cutrback rules under the Internal Revenue Code and ERISA are <u>not</u> violated by amendments to the benefit formula for this plan. This plan formula has been [in] existence for more than thirty (30) years, and the Internal Revenue Service has always approved this benefit calculation as well as the ability to amend the benefit formula on an annual basis in order to match the plan contribution with the employer's profit. In fact, the Defendant voluntarily presented the Internal Revue with accounts and allocations worksheets for each year that the Plaintiff participated in this plan when it notified the Internal Revenue of the inadvertent use of an incorrect date of birth for the Plaintiff, and the Internal Revenue did not object or voice any concerns whatsoever with respect to these annual amendment or the calculation of the Plaintiff's accrued benefits.

The Plaintiff was well aware of the annual amendments to the plan, and she has offered the December 31, 1997 amendment which changed the Normal Retirement Benefit formula to 21.50% as a part of the record (A128). The Plaintiff has also attached a copy of the accounts and allocations worksheet for the December 31, 1998 calculations which show the Normal Retirement Benefit formula as being 16.50% instead of 21.50% as a part of the record (!132). She has also attached a copy of the December 31, 2000 accounts and allocations worksheet which shows the benefit formula as being 19.25% instead of 16.50% as part of the record (A130). She has also attached a copy of the December 31, 2002 accounts and allocations worksheet which shows the benefit formula as being 15.70% as part of the record (A131). All of these items were in the Plaintiff's possession prior to her termination of employment.

Defendant argues that plaintiff was given proper notices of the benefit formula for each year and she cannot chose to utilize the highest Normal Retirement Benefit formula as her benefit irrespective of the proper amendments.

Last fall, the Eighth Circuit Court of Appeals summarized the analysis in determining the standard of review to be used in Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781-782 (8th Cir. 2004), as follows:

> The Supreme Court has declared a de novo standard of review applies to a challenge to the denial of benefits, unless the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan gives discretion to the plan administrator, then a plan administrator's decision is reviewed judicially for an abuse of discretion. Id. Under an abuse of discretion standard of review, a plan administrator's decision will stand if reasonable; "i.e., supported by substantial evidence." Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001) (quoting Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996)). "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).
>
> In order for a plan beneficiary to obtain a less deferential standard of review, she "must present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo, 144 F.3d at 1160. To establish the second requirement, a plan beneficiary "must only show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.' " Id. at 1161 (quoting Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996)).

Just this year, the Eighth Circuit explained in Torres v. UNUM Life Ins. Co. of America, 405 F.3d 670, 679 (8th Cir. 2005):

> The existence of a palpable conflict of interest and serious procedural irregularities does not necessarily mean that we will apply a less deferential standard of review. Torres must also satisfy the second part of the Woo test which requires him to show how the conflict of interest or serious procedural irregularity caused a serious breach of UNUM's fiduciary duty. He would do so by showing that the conflict or irregularity has "some connection to the substantive decision reached." Woo, 144 F.3d at 1160-61. We have recognized that this requirement "presents a considerable hurdle" for plaintiffs, Barnhart, 179 F.3d at 588 n. 9, and we are aware of only two cases that have satisfied the second part of the Woo test.

The Court agrees with defendant that the case of McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1030-1031 (8th Cir. 2000) regarding procedural irregularities is applicable. The following excerpts illustrate:

> McGarrah alleges two procedural irregularities – that Hartford's December 1997 notice did not adequately explain why disability benefits were being terminated, and that Hartford totally failed to respond to McGarrah's appeal from that adverse decision and submission of additional medical evidence of disability.
>
> A plan administrator must "set forth the rationale underlying [its] decision so that the claimant may adequately prepare an appeal to the federal courts, and so that a federal court may properly review ... the decision." Collins v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 18 F.3d 556, 561 (8th Cir. 1994). Hartford's December 1997 notice of decision explained that McGarrah's disability benefits were being terminated because Dr. Hendricks had recently described the cervical fusion as successful ("rock-solid"), and because the September 1997 videotape showed McGarrah performing many activities inconsistent with his claim of continued total disability. This initial notice easily satisfied the Collins standard.
>
> Hartford's failure to respond to McGarrah's February 1998 appeal is more troubling. This was a serious procedural irregularity. Hartford's December 1997 notice promised a written response if McGarrah appealed, as the Policy's claims procedures require. Moreover, the Department of Labor's regulations require that a plan administrator provide an appeal procedure that culminates in a written decision. See 29 C.F.R. § 2560.503-1(h)(3). Hartford offers no explanation for its failure to respond to McGarrah's timely appeal. Indeed, its brief on appeal simply ignores the problem. But the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review. As we said in Buttram, 76 F.3d at 900, a claimant must also present evidence that the irregularity raises – serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim; see Restatement (Second) of Trusts § 187 cmt. h. For example, where the plan trustee does not inquire into the relevant circumstances at issue; where the

> trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process, a court may infer that the trustee did not exercise judgment when rendering the decision.
>
> We conclude that McGarrah has failed to meet this rigorous standard. As we have noted, Hartford made a thorough investigation before terminating McGarrah's benefits, and its December 1997 notice adequately explained both the basis for the adverse decision and McGarrah's right to appeal. From a substantive standpoint, McGarrah's appeal required no response by Hartford to permit meaningful judicial review. McGarrah submitted Dr. Hendricks's conclusory February 1998 statement that McGarrah was now permanently and totally disabled. But that statement was facially inconsistent with Hendricks's earlier predictions that McGarrah's neck condition would improve, and the failure to submit any notes from Dr. Hendricks's October 29, 1997, examination left the appeal with no new medical evidence contradicting the overwhelming evidence that McGarrah was no longer disabled provided by the September 1997 videotape and McGarrah's evasive October 23 interview. In these circumstances, Hartford's failure to respond to McGarrah's appeal, while wrong, does not undermine our confidence in the integrity of its decision-making process.

The Court finds that the documents in dispute should indeed be considered part of the administrative record. As explained by defendant, the series of letters that commenced almost immediately after plaintiff's termination are an integral part of the claims process. To ignore them would be to look at an incomplete picture and pretend that the claims process only started nine months later.

Given the proper consideration of those documents and applying the above legal standards, the Court finds that plaintiff has failed to present a serious procedural irregularity which would warrant applying a less deferential standard of review.

The Court finds that the case of Hebert v. SBC Pension Benefit Plan, 354 F.3d 796, 798-800 (8th Cir. 2004) provides the following excellent guide in addressing whether defendant's interpretation of the plan is reasonable:

> Because it is undisputed "[the SBC Plan] gives [SBC] discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we review the denial of benefits for an abuse of discretion, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and reverse SBC's decision only if it is arbitrary and

capricious, <u>Brumm v. Bert Bell NFL Ret. Plan</u>, 995 F.2d 1433, 1437 (8th Cir. 1993). We uphold SBC's interpretation of the SBC Plan if it is reasonable. <u>Id.</u> SBC's interpretation "is not unreasonable merely because the reviewing court disagrees with it." <u>Fletcher-Merrit v. NorAm Energy Corp.</u>, 250 F.3d 1174, 1180 (8th Cir. 2001).

This controversy involves SBC's interpretation of paragraph 8.2.1 of the SBC Plan, which states as follows:

> If the [SBC Plan] provides for the computation of monthly pension benefits in a different manner than that provided under [the PTG Plan], [Hebert's] monthly pension benefit under [the SBC Plan] shall equal the greater of
> (a) the sum of
> (1) the monthly pension benefit determined for all service credit included in [Hebert's] Pension Service Credit under [the PTG Plan], in accordance with the provisions of such plan ..., plus
> (2) the monthly pension benefit determined for all periods of Pension Calculation Service [Hebert] was covered by [the SBC Plan], or
> (b) the monthly pension benefit determined for all service credit included in [Hebert's] Pension Service Credit under [the PTG Plan] and all Pension Calculation Service during which [Hebert] was covered by [the SBC Plan], in accordance with the provisions of the Plan.

(Emphasis added). Both parties agree paragraph 8.2.1(b) provides Hebert with the greatest amount of pension benefits, regardless whether the three MRO years are included in paragraph 8.2.1(b)'s calculation.

SBC interpreted paragraph 8.2.1(a) to include Hebert's three MRO years in computing Hebert's benefits. However, SBC interpreted 8.2.1(b) not to include Hebert's three MRO years in computing Hebert's benefits. SBC based its differing interpretations on how the "in accordance" phrases are used in paragraphs 8.2.1(a)(1) and 8.2.1(b).

To determine if SBC's interpretation of paragraph 8.2.1 is reasonable, we consider five factors: (1) whether SBC's interpretation is consistent with the SBC Plan's goals; (2) whether SBC's interpretation renders any of the SBC Plan's language internally inconsistent or meaningless; (3) whether SBC's interpretation conflicts with ERISA's substantive or procedural requirements; (4) whether SBC has consistently interpreted the words at issue; and (5) whether SBC's interpretation is contrary to the SBC Plan's clear language. <u>Finley v. Special Agents Mut. Benefit Ass'n</u>, 957 F.2d 617, 621 (8th Cir. 1992). The above factors need not be examined in any order as each factor presents us with a discrete inquiry. <u>Hutchins v. Champion Int'l Corp.</u>, 110 F.3d 1341, 1344 (8th Cir. 1997).

SBC's interpretation does not render any of the SBC Plan's language internally inconsistent or meaningless and is not contrary to the SBC Plan's clear language. Under paragraph 8.2.1(a)(1), a portion of Hebert's pension benefit and Pension Service Credit are determined "in accordance with the provisions of such plan." The phrase "in accordance with the

-10-

provisions of such plan " refers to the PTG Plan as modified by the MRO Amendment. Under the PTG Plan's MRO Amendment, for the purpose of computing benefits, Hebert's "term of employment shall equal [Hebert's] term of employment as of [Hebert's] MRO Effective Date increased by three years." Thus, for computing Hebert's benefit under paragraph 8.2.1(a)(1), Hebert receives the full benefit of the three extra MRO years.

Two interpretations arguably exist regarding the calculation of Hebert's PTG Pension Service Credit under paragraph 8.2.1(b), because a comma separates the phrase "in accordance with the provisions of the Plan " from the remainder of the sentence. The phrase "in accordance with the provisions of the Plan " clearly refers to the SBC Plan. Under one interpretation, the phrase "in accordance with the provisions of the Plan " could modify the phrase "[Hebert's] Pension Service Credit under the [PTG Plan]." Under this interpretation, SBC looks to the SBC Plan's Pension Service Credit definition to determine whether Hebert's three MRO years are used to calculate her benefits under the SBC Plan, and the Pension Service Credit clearly does not include the three extra MRO years. Under another interpretation, the phrase "in accordance with the provisions of the Plan " could modify the term "monthly pension benefit." Under this interpretation, the phrase simply specifies the SBC Plan's formula is used to calculate benefits, while Hebert's Pension Service Credit under the PTG Plan would be calculated by referring to the PTG Plan. SBC adopted the first interpretation of paragraph 8.2.1(b). We conclude SBC's interpretation is reasonable and logical.

Two other reasons reveal SBC's interpretation is reasonable. First, the SBC Plan's drafters could have included the modifier "in accordance with the PTG Plan" after the Pension Service Credit in paragraph 8.2.1(b), as the drafters did in paragraph 8.2.1(a)(1). Second, the PTG Plan does not define Pension Service Credit. Without such a definition, it would be difficult to determine Hebert's Pension Service Credit in calculating Hebert's benefits under the SBC Plan.

We now turn to SBC's application of the SBC Plan's Pension Service Credit definition to Hebert. Under the SBC Plan, a service credit must be recognized for eligibility, accrual, and vesting to be a Pension Service Credit. SBC asserts the three MRO years do not qualify as a Pension Service Credit because the three MRO years were not recognized, inter alia, for vesting. The MRO Amendment contains no provision stating whether the three MRO years can be used to vest an employee's pension. With the MRO Amendment's silence on the vesting of the three MRO years, we cannot conclude SBC's interpretation rendered terms of the MRO Amendment or the SBC Plan internally inconsistent with or contradictory to the clear language of the MRO Amendment or the SBC Plan.

We conclude the remaining <u>Finley</u> factors do not suggest SBC abused its discretion. Aside from conclusory or circular arguments, nothing before us suggests SBC's interpretation is inconsistent with the SBC Plan or its goals. Finally, no contention exists that SBC's interpretation violates ERISA. Paragraph 8.2.1(a) preserves Hebert's benefits under the PTG Plan by giving her the full benefits accorded her under the PTG Plan, including the three MRO years, plus any benefits accrued under the SBC Plan. Paragraph 8.2.1(b) actually

provides Hebert greater benefits, because of the larger multiplier used under paragraph 8.2.1(b) of the SBC Plan. [FN1]

> FN1.  SBC does not receive a windfall, because Hebert's benefits under paragraph 8.2.1(b) are greater than the benefits she would receive under paragraph 8.2.1(a), using the three extra MRO years.

After careful review of the administrative record, the Court finds that defendant's excerpted explanation of the calculation of plaintiff's benefits pursuant to the plan shows why it is reasonable. Here, the pension attorney who drafted the plan was the same person who calculated the contribution of each year and calculated plaintiff's benefit.  His interpretation is consistent with the plan's goals of providing the correct benefits based upon the employer's yearly contributions so that all plan participants will receive their proper benefit.  The interpretation is internally consistent with Section 5.2 of the plan as shown by the amended yearly amounts rather than plaintiff's fixed rate of 21.5%. The Court cannot find that this interpretation conflicts with ERISA's requirements as it appears that the formula follows the plan directives and that yearly notices were given to plaintiff reflecting the changing rate.  There is simply no evidence that this formula has ever been applied differently as the same person who drafted the plan has been the same one making the calculations.  In sum, there is no indication that the defendant's interpretation is contrary to the plan's language.  Indeed, to find otherwise would be to ignore the yearly notices and render them a nullity.

Accordingly, the Court finds that defendant's calculation of plaintiff's benefits is reasonable and judgment will be entered in favor of defendant.

IT IS SO ORDERED this 29th day of August, 2005.

                                                                                       */s/ George Howard, Jr.*
                                                                               UNITED STATES DISTRICT JUDGE