IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DORA MCNEIL                                                                                                    PLAINTIFF

v.                                          No. 4:03CV00650 JLH

JOSE ABISEID, M.D., P.A.                                                                              DEFENDANT

**OPINION AND ORDER**

Dora McNeil brought this ERISA action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover pension benefits from her former employer, Dr. Jose Abiseid. The parties agree that Abiseid's retirement plan provides pension benefits to McNeil but disagree regarding the amount. On August 29, 2005, this Court determined that Abiseid's calculations were reasonable and entered judgment in favor of Abiseid. On appeal, the Eighth Circuit reversed, saying that Abiseid did not adequately explain his calculations, so the Eighth Circuit could not decide whether his final determination was proper. The Eighth Circuit remanded the case to this Court with instructions to reopen the administrative record for Abiseid to provide a detailed explanation of his calculations. A second administrative record has been filed and the parties have submitted briefs, so the case is ripe for decision. For the following reasons, the Court remands McNeil's claim to the plan administrator for the Jose E. Abiseid, M.D., P.A. Retirement Plan.

**I.**

Dora McNeil worked for Dr. Jose Abiseid from February 28, 1996, until April 15, 2002. (Adm. R. 000021.) After she was terminated, Abiseid's and McNeil's attorneys began the process of determining what retirement benefit McNeil was entitled to under Abiseid's benefit plan. The retirement benefit is computed based on a percentage of the employee's average compensation payable for life beginning at retirement age. For McNeil, the benefits are payable in a lump sum

representing the present value of the future stream of payments.  Abiseid's lawyer, Barry J. Jewell, sent a letter addressed to Abiseid explaining the plan and McNeil's potential benefit under various circumstances to McNeil on April 24, 2002.  (Adm. R. O-001.)  In that letter, Jewell explained that McNeil's lump sum benefit without adjustment was $20,100.  (Adm R. O-004.)  He calculated the adjustments for present value for May 2002 as $22,036.45 and for June 2002 as $21,619.61.  (Adm. R. O-004.)  However, he went on to say:

> If I were to recalculate her accrued benefit under the plan, using her correct age, her accrued benefit would be $25,459.00.  However, the plan would violate Section 415 of the Code if it paid her a lump sum benefit greater than the amount determined using the applicable interest rate and the applicable mortality table.  Alternatively, you could purchase a lifetime annuity for her with payments beginning at age 55 with the sum of $25,459.00.

(Adm. R. O-004.)

On June 7, 2002, Jewell, acting for Abiseid, sent a letter to McNeil stating that her accrued benefit in the retirement plan was $20,100, of which 100% was vested.  (Adm. R. A105.)  He said the lump sum distribution would be in the amount of $21,619.61.  (Adm. R. A105.)  On July 29, 2002, McNeil's lawyer, Alexandra Ifrah, sent a letter questioning the calculations outlined in the April 24 letter, including the distinctions between the accrued benefit of $20,100 and the accrued benefit using the corrected age, which was $25,459.  (Adm. R. O-007.)  Jewell responded:

> The corrected accrued benefit amount was derived under the terms of the plan for funding purposes, using the five percent (5%) interest and the GE Life mortality table.  Under Section 415 of the Code, a participant cannot be paid a lump sum benefit which is more or less than the amount calculated using the GATT applicable interest rate and mortality table.

(Adm. R. A103.)

After questioning Abiseid's calculations, Ifrah calculated the lump-sum due under the plan to be $58,887 (plus 5% interest from July 6, 2002).  (Adm. R. A101.)  This calculation was based

2

on a 21.5% benefit formula and an average salary of $30,677. (Adm. R. A100.) Ifrah also calculated the lump sum limitation under Section 415 of the Internal Revenue Code to be $262,104. (Adm. R. A101.) She reached this number using the GATT mortality table and an interest rate of 5.48% which was in effect in December 2001. (Adm. R. A101.) Jewell responded with a letter on November 26, 2002, that said McNeil's account balance was $19,729. (Adm. R. A092.) On the same day, he sent a letter rejecting the $58,887 claim and a letter saying that the plan was being terminated pursuant to a distress termination. (Adm. R. A099, A123.) McNeil appealed the denial of the $58,887 claim and followed the required procedure to exhaust her administrative remedies. (Adm. R. A107-A122, O-015-O-016.)

     McNeil filed suit in this Court on August 12, 2003. The parties filed an administrative record and briefed their arguments. In addition to the parties' correspondence, the record included the retirement plan and a summary plan description. (Adm. R. A001-A091.) The record included an adoption agreement, setting out specific information about the plan, which was signed on December 31, 2001, but was to be effective January 1, 1997. (Adm. R. A136-A152.) Among other things, this document sets the benefit formula at 15.7% of the average annual compensation. Also in the record were accounts and allocations worksheets and benefit summaries reflecting McNeil's accrued benefit for the years 1998, 2000, and 2001. (Adm. R. A130-A135.) On the accounts and allocations worksheets, McNeil's age was listed consistently as 11 years younger than her actual age. (Adm. R. A130-A132.) The worksheets show different percentages used each year for the benefit formula: 16.5% in 1998, 19.25% for 2000, and 15.7% for 2001. (Adm. R. A130-A132.) There is no worksheet for 1999. The record also included a document titled "Annual Consent Memorandum of the Stockholder of Jose E. Abiseid, M.D., P.A." (Adm. R. A128-A129.) That document dated

December 31, 1997, to be effective that day, amended the retirement plan to provide that each participant would receive a benefit payable at normal retirement age equal to 21.5% of average annual compensation. (Adm. R. A129.)

This Court determined that Abiseid's calculations were reasonable. McNeil appealed to the Eighth Circuit, and that court held that Abiseid failed to provide any explanation supporting his benefit calculation or why McNeil's calculation was wrong. *McNeil v. Abiseid*, 203 Fed. App'x 748, 749 (8th Cir. 2006). The Eighth Circuit said:

> We cannot tell from the record documents–the Plan, an adoption agreement, a December 1997 Annual Consent Memorandum, and "accounts and allocations worksheets"–what information is significant or relevant to the accrued benefit calculation. In addition, unlike the district court, we fail to see how the fact that the same person drafted the Plan, calculated the accrued benefits each year, and calculated the final determination, means that the final determination was necessarily beyond challenge, and we also fail to see how annual benefits summaries McNeil received (which were never referenced in Abiseid's correspondence about McNeil's accrued benefits) established that McNeil's calculations were wrong.

*Id.* at 750. The Eighth Circuit remanded to this Court with instructions for Abiseid to reopen the administrative record to provide a detailed explanation of his calculations. *Id.*

After remand to the plan administrator, Jewell wrote a letter on December 30, 2006, in which he explained the plan and how it worked. (Adm. R. 000001-Adm. R. 000003.) He discussed some definitions provided in the plan as well as two specific sections. He first discussed section 5.2, entitled "Scheduled Individual Account Balance Accrued Benefits," which provides that "[f]or each plan year the following calculations shall be made and the actual Accrued Benefit determined as of the valuation date thereof with respect to each Participant or Former Participant . . . who is eligible to receive a benefit of any type from this plan, as follows . . . ." (Adm. R. 000002, Adm R. A028.) Section 5.2 then lists an eleven-step calculation to determine a yearly hypothetical account balance

4

for each individual. Jewell next discussed section 7.3, entitled "Determination of Benefits Upon Termination of Employment," which says: "[t]he Vested portion of any Participant's Accrued Benefit shall be a percentage of such Participant's Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the vesting schedule specified in the Adoption Agreement." (Adm. R. 000002, Adm. R. A045.)

In his explanation letter, Jewell never applied the eleven-step calculation to any of the years of McNeil's employment in his explanation, but, instead, jumped to other provisions of the plan applicable during the year she was terminated. Instead of providing an explanation under both section 5.2 and section 7.3 of the plan using McNeil's "hypothetical account balance," Jewell calculated McNeil's Accrued Benefit "using exactly the same procedure as [McNeil's] attorneys did, with only a few variations." (Adm. R. 000003.) The variations were the application of the 15.7% benefit formula (instead of 21.5%) and the applicable interest rate of 5.65% (instead of 5.48%). (Adm. R. 000004.) Jewell calculated the lump sum benefit at age 55 to be $27,793 with a present value of $21,115. Jewell explained:

> Based on the above factors, your benefit was calculated by multiplying $30,677 by 15.70% to arrive at a possible benefit of $4,816 per year, and then multiplying that by 43% to arrive at a benefit of $2,071 per year. Multiplying that benefit by the annuity purchase rate factor of 13.42 results in a lump sun benefit at age 55 equal to $27,793. You were age 50 as of the December 31, 2001 valuation date,[1] so I pulled that amount back to present value by dividing it by 1.3163 (which is the factor obtained by 1.0565 to the 5th power), which resulted in a present value of $21,115. this is less than the $22,036.45 amount which was actually offered to you in April of 2002, probably due to rounding or to giving you credit from December of 2001 to April of 2002, I just don't recall. Your attorneys used 5% interest to pull their determination of accrued benefit back to present value, continuing their strategy of

---

[1] This is incorrect. McNeil's birthday is July 6, 1950, so she was 51 years old on December 31, 2001.

>picking and choosing the factors which would result in the highest benefit, and ignoring the terms of the plan and applicable law.

(Adm. R. 000004.)

In her letter in response to Jewell's explanation, Ifrah addressed several concerns she had about the benefit formula and its amendments through the years. She observed that it appeared the 15.7% benefit formula applied for all of the years under his explanation, even though the accounts and allocations worksheets reflected varying benefit formulas for 1998, 2000, and 2001. (Adm. R. 000009.) She said that there was never proper notice under ERISA section 204(h) for the amendments to the formula reflected in the worksheets. (Adm. R. 000010.) She also said that if Abiseid was assuming that the amendment in 2001 to 15.7% retroactively applied to amend the formula to all of those years, then the calculations violate ERISA section 204(g)(1) by decreasing McNeil's accrued benefit. (Adm. R. 000010.)

Ifrah hired an actuary named James Turpin to calculate McNeil's claim and evaluate Jewell's calculations. Turpin says that, following the plan provision results in a determination that Abiseid owes McNeil a lump sum of $126,069, based on the 21.5% benefit formula and what he terms the "premium reserve accrual method." (Adm. R. 000012.) This number is $67,182 greater than McNeil's original calculation of $58,887, which was also calculated using the 21.5% benefit formula.

Jewell sent a letter in response to McNeil's letter and Turpin's calculations. (Adm. R. 000066-70.) As far as the 2001 Adoption Agreement and McNeil's suggestion that he intended to retroactively amend the benefit formula, he explained:

>The 2001 plan restatement does not change the benefit formula retroactively to 1997. That amendment was required in order to amend the plan for legislation from 1994 through 2000 which is commonly referred to as GUST. . . . Of course, only the

6

> GUST amendment were intended to be retroactive. Any amendments to the benefit formula are clearly not retroactive, and Ms. McNeil's benefit would not have been decreased in any manner under the terms of the plan.

(Adm. R. 000067.)

Jewell attached several documents to his letter, including accounts and allocations worksheets for McNeil's benefit and several "Annual Consent Memorandums" that reflect amendments to the benefit formula under the plan. McNeil objects to the inclusion of these documents in the administrative record. (Adm. R. 00071-103.) Some of those documents – specifically the December 1997 Annual Consent Memorandum and a May 9, 2002 letter from Jeff Rosenzweig – were included in the previous administrative record. (Adm. R. 000071-73, 000102-103.) The remaining documents were first produced along with the letter. (Adm. R. 000074-101.) There is a "Special Consent Memorandum" that amended the plan's benefit formula to 16.5%. (Adm. R. 000074-75.) It takes effect January 1, 1998 and is also dated January 1, 1998. (Adm. R. 000074.) Similarly, an "Annual Consent Memorandum" outlines an amendment of the benefit formula to 19.5% that is dated December 31, 1999, to be effective the same date. (Adm. R. 000076.) This is the first time the benefit formula for the year 1999 appears in the record. A "Special Consent Memorandum" dated January 1, 2000 and effective on that date amended the benefit formula to 19.25%. (Adm. R. 000077.) Another "Special Consent Memorandum" is dated and effective January 1, 2001 and amended the formula to 15.7%. (Adm. R. 000078.)

After the administrative record was filed, the parties submitted briefs. Abiseid's brief, like his letters, does not go through the eleven-step calculation to reach McNeil's "account balance." From reviewing the plan and Abiseid's own assertions in the administrative record, it seems that the calculation of the yearly account balance as outlined in section 5.2 is essential to determine what

McNeil is owed, but he never applies these calculations. The accounts and allocations worksheets attached to Jewell's March 2007 letter to Ifrah reflect the numbers required to calculate each yearly account balance, but the numbers are not put in context or given significance. (Adm. R. 000095-99.) Even if the worksheets reflect Abiseid's calculations of the yearly account balance, they still reflect an age for McNeil that is incorrect by one year, despite Abiseid's claims that he corrected McNeil's age. (Adm. R. 000095-99.)

## II.

There are several issues to address on remand: whether the documents McNeil disputes should be considered part of the administrative record; what standard of review applies; and whether Abiseid's calculations are reasonable under the standard of review. Each of these issues will be addressed in turn.

**A.   ADMINISTRATIVE RECORD**

Jewell sent a letter with several documents attached on March 2, 2007. McNeil argues that the attached documents should not be considered part of the record since they include information that is relevant to her claim that has not been brought up previously. A district court ordinarily only considers the evidence that was before the plan administrator when reviewing the administrator's decision. *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Farley v. Ark. Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998). The December 1997 Annual Consent Memorandum and a May 9, 2002 letter from Jeff Rosenzweig were part of the previous record and are therefore already part of the record on remand. (Adm. R. 000071-73, 000102-103.) McNeil says the documents should not be included because they were not produced to her in a timely fashion, but she has offered no reason to conclude that the documents were not before the

administrator when the decision was made, so the documents will be considered part of the administrative record.  *See McNeil*, 203 Fed. App'x at 749.

**B.    STANDARD OF REVIEW**

Generally, when a court reviews an ERISA plan administrator's decision and the plan expressly gives the administrator discretion to determine eligibility for benefits and to construe plan terms, the court applies an abuse-of-discretion standard of review.  *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1030 (8th Cir. 2000).  However, if there is "'material, probative evidence demonstrating (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty,' the Court could apply a less-deferential standard of review."  *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 967 (8th Cir. 2004) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)).  Abiseid did not explain his calculations under the terms of the plan in favor of reworking McNeil's previous calculations.  Despite his identification of an "eleven-step calculation," he never applies the eleven steps to any of McNeil's data in any year.  Furthermore, Abiseid continued to use the wrong age on what appear to be the corrected yearly calculations for McNeil's accrued benefits.   These facts certainly point to procedural irregularities on Abiseid's part.

The "mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review."  *McGarrah*, 234 F.3d at 1031.  The procedural irregularities must raise "'serious doubts as to whether the result reached was the product of an arbitrary decision.'"  *Sheehan*, 372 F.3d at 967 (quoting *Buttram v. Cent. States S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996)).  Such irregularities include:

> where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process . . . .

*Buttram*, 76 F.3d at 900. The Eighth Circuit said that when an administrator has not explained the calculations it used to reach an accrued benefits decision, there is an inference that the administrator has not exercise judgment. *McNeil*, 203 Fed. App'x at 749. Even after a second administrative record has been compiled, Abiseid has still failed to explain his calculations in light of the terms of the plan. He concedes that the adoption agreement in 2001 could not retroactively reduce the percentage used in the formula from 21.5% to 15.7% for the years from 1997-2000, but he uses the latter figure anyway. He still offers no explanation for failing to follow the eleven-step formula outlined in section 5.2. He still has not used McNeil's correct age in his calculations. Without knowing McNeil's yearly account balance, how it was figured, or whether the correct age was used, there is no way to determine whether Abiseid's accrued benefit was correct or even reasonable. Jewell's 2006 calculation yields a benefit amount less than his 2002 calculation, for which he offers no explanation other than that he may have made a rounding error or "giving you credit from December of 2001 to April of 2002, I just don't recall." (Adm. R. 000004.) Therefore, a "sliding scale" standard of review, giving less deference to Abiseid's determination than abuse of discretion, applies here. *Cf. Woo*, 144 F.3d at 1161.

When a court reviews a plan administrators decision for abuse of discretion, the decision will stand if a "reasonable person could have reached a similar decision." *Id.* at 1162. To be reasonable, the decision must be supported by substantial evidence, which is "'more than a scintilla but less than a preponderance.'" *Id.* (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 897 (8th Cir. 1996)). Under

the sliding scale approach, the evidence supporting the administrator's decision must increase in proportion to the seriousness of the procedural irregularity. *Id.* Because Abiseid did not adequately explain his calculation of McNeil's accrued benefit and it appears he continued to use the wrong age in his computations, there is a serious procedural irregularity. The record must contain substantial evidence nearing a preponderance to uphold Abiseid's decision.

C.      **REVIEW OF ABISEID'S EXPLANATION AND CALCULATIONS**

To determine if a plan administrator's interpretation of a plan is reasonable, a court considers five factors: 1) whether the interpretation is consistent with the goals of the plan; 2) whether the interpretation renders language in the plan meaningless or inconsistent; 3) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; 4) whether the plan administrator interpreted the plan provisions at issue consistently; and 5) whether the interpretation is contrary to the clear language of the plan. *Janssen v. Minneapolis Auto Dealers Benefit Fund*, 447 F.3d 1109, 1114 (8th Cir. 2006). In this analysis, significant weight should be given to a misinterpretation of unambiguous language in a plan. *Id.*

Part of the dispute over the calculations between McNeil and Abiseid involves which benefit formula should apply. McNeil says that Jewell inappropriately applied the 15.7% formula, which is reflected in the Adoption Agreement (Adm. R. A141) and a "Special Consent Memorandum" dated January 1, 2001. (Adm. R. 000078.) McNeil argues that if Jewell used the 15.7% benefit formula for all of the years, then he violated ERISA section 204(g)(1). Section 204(g)(1) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." 29 U.S.C. § 1054(g)(1). Jewell responded to this argument by explaining the amendments in the Adoption Agreement: "only the GUST amendment were intended to be

11

retroactive. Any amendments to the benefit formula are clearly not retroactive, and Ms. McNeil's benefit would not have been decreased in any manner under the terms of the plan." (Adm. R. 000067.) Although Jewell never makes it clear in his explanations which benefit formula applies to each year because he never explains the yearly calculations, it appears from the accounts and allocations worksheets that each year he applied the benefit formula identified in the various amendment memoranda. (Adm. R. 000072-78, 000095-99.)

McNeil also argues that Abiseid never provided adequate notice for the yearly amendments to the benefit formula under the plan. At the time the amendments were made, Section 204(h) of ERISA read:

> A plan . . . may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after the adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to (A) each participant in the plan . . . .

29 U.S.C. § 1054(h) (2000), *amended by* 29 U.S.C. § 1054(h) (Supp. I 2001). Courts have held that inadequate notice renders the amendments at issue invalid. *Abels v. Titan Int'l, Inc.*, 85 F. Supp. 2d 924, 936-37 (S.D. Iowa 2000); *Copeland v. Geddes Fed. Sav. & Loan Ass'n Ret. Income Plan*, 62 F. Supp. 2d 673, 677-79 (N.D.N.Y. 1999). When the amendments were made to the plan each year, it appears from the various memoranda that they were to take effect on the same dates that they were signed. (Adm. R. 000072-78.) McNeil says that she did not have any notice of these amendments. Abiseid has also provided copies of the notices that should have been given to employees titled "Summary of Material Modification" that identify the benefit formula amendments each year. (Adm. R. 000080-84.) The notices show the effective date, but they do not show the date they were given to the employees. Abiseid only says that McNeil received notice, but he does not provide any

documentation that this notice was given 15 days before the effective date of the amendment. The burden is on the plan administrator to show that the required Section 204(h) notices were provided to employees. *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 478 (5th Cir. 2000); *Stanton v. Larry Fowler Trucking, Inc.*, 52 F.3d 723, 728 (8th Cir. 1995) ("It is only fitting to place the burden of proving notice was given on the party required to give notice . . . [t]o hold otherwise would place the employee in the untenable position of proving a negative . . . ."). Without any evidence to show the board of directors' memoranda were not signed the same day the amendment took effect or any evidence that the "Summary of Material Modification" notices were provided before any of those days, the Court assumes the notice was provided, at the earliest, on the very day the amendments took effect. Since it is clear from the parties' various calculations that the amendments would significantly reduce the rate of future benefit accrual under the plan, the notice was not adequate under ERISA section 204(h). The applicable benefit formula for all years should be 21.5%. In light of these facts, Abiseid's explanation and calculations conflict with the procedural requirements of ERISA.

Because Abiseid's explanation never places his calculations of McNeil's beneifts in context of the plan's requirements, it is impossible to tell whether he interpreted her benefit consistently with the plan or not. Furthermore, he violated the procedural requirements of ERISA because he did not provide adequate notice of amendments to the benefit formula. Under the less deferential standard of review, it is apparent that his calculations are unreasonable. Even if the Court were to apply the abuse of discretion standard, the result would be the same – Abiseid's failure to follow the terms of the plan in calculating the benefit owed to McNeil is unreasonable.

McNeil asserts that this Court should accept her actuary's calculation of her benefit instead of Abiseid's. However, the amount that he calculated on remand – $126,069 – is more than double the amount of McNeil's original calculation of $58,887, which was also calculated using the 21.5% benefit formula. McNeil offers no explanation of how her second calculation, using the same formula as her first, could arrive at an amount owed that was more than double the amount determined by her first calculation. Furthermore, it seems unlikely on the face of it that the pension plan for a small business which only two or three employees at a given time would yield a retirement benefit of $126,069 after six years of employment. Therefore, the claim must be remanded to the administrator.

However, in view of the fact that this claim is now several years old and has already been remanded following an appeal to the Eighth Circuit, the Court would be willing to appoint a special master, pursuant to Rule 53 of the Federal Rules of Civil Procedure, to calculate the benefit. The Court will reserve entering a judgment for a period of ten business days after entry of this Opinion and Order so that the parties will have an opportunity to move jointly for appointment of a special master. If no such motion is filed, the Court will enter a judgment remanding this matter to the plan administrator.

## III.

McNeil also requests this Court award her attorneys' fees and prejudgment interest. In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). When deciding whether to award attorneys' fees a court considers the following:

> (1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) its ability to pay, (3) the potential for deterring others in similar circumstances,

>(4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions.

*Mansker v. TMG Life Ins. Co.*, 54 F3d 1322, 1329 (8th Cir. 1995). The fact that Abiseid has continually failed to give an adequate explanation of his calculations and at the very least has failed to correct McNeil's age in the context of those calculations points to a lack of good faith on his part. Because Abiseid is a small employer, his ability to pay is not as clear as it would be in a case involving a large corporation. An award of attorneys' fees likely would deter others from being evasive or unclear about the application of the terms of their benefits plans to their employees. In this action, McNeil did not explicitly seek to benefit all plan beneficiaries or resolve a significant legal question about ERISA. However, the Court cannot determine the overall merits of the parties' positions until an accurate calculation of McNeil's benefit has been provided, so the Court will reserve ruling on McNeil's request for attorneys' fees until then.

ERISA does not expressly provide for prejudgment interest; however, prejudgment interest awards are permitted under 29 U.S.C. § 1132(a)(3)(B), which provides for appropriate equitable relief. *Id.* at 1330. Generally, "prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). Prejudgment interest should be awarded unless there are exceptional circumstances that would make the award inequitable. *Mansker*, 54 F.3d at 1330. There are no exceptional circumstances here and it is clear that McNeil has been denied the use of retirement benefits owed to her, therefore the requested 5% prejudgment interest award is appropriate.

**CONCLUSION**

For the reasons stated above, McNeil's claim is remanded to the plan administrator for the Jose E. Abiseid, M.D., P.A. Retirement Plan for further consideration consistent with this opinion. In the alternative, if the parties wish, the Court will appoint a special master to determine the amount of McNeil's benefit in accordance with Fed. R. Civ. P. 53.  A joint motion seeking appointment of a special master must be filed within ten business days, or the Court will enter a judgment remanding this matter to the plan administrator.

IT IS SO ORDERED this 30th day of October, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE
