**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DORA MCNEIL                                                                          PLAINTIFF

v.                                        No. 4:03CV00650 JLH

JOSE E. ABISEID, M.D., P.A.                                                          DEFENDANT

**<u>OPINION AND ORDER</u>**

Dora McNeil has filed a motion for attorneys' fees in which she requests that she be awarded

$106,719.10 in fees and expenses related to her prosecution of this action.  Jose E. Abiseid, M.D.,

P.A., opposes the motion.[1]  Abiseid argues, first, that McNeil is not entitled to recover attorneys' fees

and, secondly, that the fee request is excessive.

McNeil was employed by Abiseid from February 28, 1996, until April 15, 2002, earning an

average of approximately $30,000 per year.  During that time, she participated in the Jose E. Abiseid,

M.D., P.A., Retirement Plan, which had been drafted by a lawyer named Barry Jewell.  Abiseid is

the plan administrator.  The plan provided a complicated eleven-step formula for calculating the

retirement benefit for an employee.  The benefit was based in part on a percentage of the employee's

average compensation payable for life beginning at retirement age.  When McNeil's employment

with Abiseid terminated, the benefits were payable in a lump sum representing the present value of

the future stream of payments.  Jewell, acting on behalf of the plan administrator, calculated the

amount owed to McNeil as approximately $22,000.  McNeil's lawyer, Alexandra Ifrah, calculated

the amount due to be $58,887, plus 5% interest from July 6, 2002.  Part of the difference was

accounted for by the fact that Jewell used in his calculations a date of birth that misstated McNeil's

---

[1] This opinion will refer to Jose E. Abiseid, individually, as "Dr. Abiseid," and to Jose E.
Abiseid, M.D., P.A., either as "Abiseid" or the "professional association."

age by eleven years.  Another part of the difference was based upon a disagreement as to whether the plan provided for a 15.7% benefit formula or a 21.5% benefit formula.

McNeil commenced this action by filing a complaint on August 12, 2003.  After an administrative record had been filed and both sides had briefed the issue, another judge of this Court found that Jewell's calculation of the benefits owed to McNeil was reasonable and entered judgment in favor of Abiseid.  McNeil appealed.  The Eighth Circuit reversed, finding procedural irregularities inasmuch as Jewell never explained his calculations and never explained to McNeil why her claimed amount was incorrect.  The Eighth Circuit remanded to this Court with directions to remand to Abiseid with instructions to reopen the administrative record to respond to McNeil's claim with a detailed explanation of its calculations.

After McNeil's claim was remanded to Abiseid, Jewell again calculated the benefit and again wrote a letter purporting to explain the calculation.  He then calculated a present value of $21,115, which was less than the amount that he previously calculated.  Jewell never followed the eleven-step formula in any of the calculations or in any of the explanations that he offered on Abiseid's behalf. McNeil's attorneys hired an actuary named James Turpin to calculate the benefit.  Turpin calculated that Abiseid owed McNeil a lump sum of $126,069, which was more than twice as much as the prior calculation made on McNeil's behalf.  The Court found that Jewell's failure to follow the terms of the plan in calculating the benefit owed to McNeil was unreasonable.  The Court questioned, however, whether Turpin's calculation was correct in light of the fact that it seemed a large amount of retirement benefit to accrue in six years in a job paying $30,000 and in light of the fact that the sum was more than double the amount of Ifrah's original calculation showing the benefit owed to be $58,887, using the same formula as Turpin.  Therefore, the Court determined that the claim

should be remanded to Abiseid.  By agreement of the parties, however, instead of remanding the Court appointed an actuary named Paul Stephen Osborn as a court-appointed expert to calculate the benefit.

Osborn calculated the amount of lump sum owed to McNeil as $137,200.08 if paid in June 2009, $137,759.05 if paid in July 2009, and $138,320.30 if paid in August 2009.  Osborn also explained why the benefit was substantially more than one would expect.  In contrast to a typical retirement plan, the Abiseid plan was written so that a major portion of the benefits would accrue early in a person's work life rather than later.  Furthermore, the Abiseid plan used an actuarial equivalent factor that resulted in lump sum payments approximately 50% higher than most plans.

McNeil filed a motion asking the Court to adopt the opinion of Osborn as to the amount of benefit owed.  Although Abiseid objected, he did not point to any error in Osborn's calculations or any respect in which Osborn failed to follow the plan.  He cited some information he had received from the Internal Revenue Service to the effect that McNeil was owed $56,182.79 at the time she left his employment and now was owed $75,290.31.  The Court then adopted Osborn's report as the calculation of the correct amount of the benefit and entered judgment accordingly.  Abiseid paid the judgment promptly.

The governing statute provides, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  In an ERISA case there is no presumption that the prevailing party is entitled to recover attorneys' fees.  *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 971-72 (8th Cir. 2002).  When deciding whether to award attorneys' fees, a court considers the following: (1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) its ability to pay, (3) the potential for deterring others in similar

circumstances, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. *Lawrence v. Westerhaus*, 749 F.2d 494, 495-96 (8th Cir. 1984). The five factors stated in *Westerhaus* are not exclusive, nor are they to be applied mechanically. *Martin*, 299 F.3d at 972.

With respect to the first factor, Jewell, acting on behalf of Abiseid, repeatedly failed to give an adequate explanation of his calculations and failed to correct McNeil's age in those calculations even after the mistake had been pointed out to him. Abiseid argues that these are merely mistakes, not bad faith, but it looks like bad faith. Dr. Abiseid states in an affidavit that he intended to operate the plan in accordance with the plan requirements and the law, and that he relied upon experts in whom he trusted to see that  it was done correctly. The Court does not doubt Dr. Abiseid in that regard, but Jewell was acting on behalf of the professional association in its capacity as the plan administrator, and his conduct is attributable to the professional association acting as the plan administrator. Abiseid also argues that a prior judge of this Court found that Jewell's calculations and explanations were reasonable, which Abiseid argues proves beyond doubt that there was no culpability or bad faith. That argument overlooks the Eighth Circuit opinion, which rejected this Court's finding that the calculations and explanation were reasonable and which held that there were procedural irregularities that should be corrected on remand. On remand, those procedural irregularities were not corrected; instead, they were repeated. Thus, the record supports a finding of some culpability or bad faith on behalf of Abiseid.

As to the second factor, the evidence in the record shows that as of December 31, 2008, the retirement plan had assets totaling $154,233. After the lump sum distribution to McNeil, the amount remaining in the retirement plan would be less than $17,000, not counting any payments into the plan

4

in the year 2009.  The retirement plan is unable to pay attorneys' fees.

Abiseid has also provided information regarding the ability of the professional association to pay attorneys' fees.  According to the affidavit of the certified public accountant who prepares Abiseid's tax returns, for the previous six years, the professional association had a net income or net loss as follows:

| | |
|---|---|
| 2003 | ($12,894) |
| 2004 | ($3,379) |
| 2005 | ($1,504) |
| 2006 | ($14,086) |
| 2007 | $3,402 |
| 2008 | $17,801 |

The affidavit also states that Dr. Abiseid receives a salary from the professional association.   His salary for the years from 2003 to 2008 has been as follows:

| | |
|---|---|
| 2003 | $118,000 |
| 2004 | $123,846 |
| 2005 | $160,140 |
| 2006 | $114,042 |
| 2007 | $139,968 |
| 2008 | $142,460 |

If the Court considers only the assets of the retirement plan, it could not pay attorneys' fees.  If the Court considers only the net income of the professional association after paying a salary to the sole shareholder, it would not have the ability to pay attorneys' fees.  If the Court considers the salary of Dr. Abiseid as available to pay attorneys' fees to McNeil, the professional association would have some ability to pay attorneys' fees, but even viewed in that light, its ability to pay fees would be far less than that of the typical ERISA defendant.

The parties have not briefed the issue of whether the Court should consider the assets only of the retirement plan, the income stream of the professional association without respect to the salary

paid to Dr. Abiseid, or the income stream of the professional association including the salary paid to Dr. Abiseid, nor has the Court found a case on point.

The next consideration is the potential for deterring others in similar circumstances. Of course, whenever a court awards attorneys' fees in an ERISA case, that award logically should have a tendency to deter other plan administrators from repeating the conduct that resulted in the attorneys' fees.

The next consideration is whether the moving party sought to benefit all of the plan participants or to resolve a significant legal question regarding ERISA. The only plan participants are McNeil and Dr. Abiseid. Obviously, McNeil sought to recover only for herself, not for someone else, and certainly not for Dr. Abiseid. Nor did she seek to resolve a significant legal question regarding ERISA.

Finally, the outcome of the case vindicates the merits of McNeil's position *vis a vis* that of Abiseid. As mentioned above, Abiseid intended that the lump sum benefit payment owed to McNeil was approximately $22,000, whereas McNeil contended that it was $58,887 plus interest at the rate of 5% per annum from July 6, 2002. As it turned out, the lump sum benefit owed to McNeil as of the summer of 2009, which Abiseid has paid, exceeds $137,000. Both Abiseid and McNeil understated the lump sum due and owing, though Abiseid understated it more than did McNeil.

It is no easy task to apply the *Westerhaus* factors to this case. As noted, the Court does believe that there was some culpability or bad faith attributable to Abiseid, though not to Dr. Abiseid. On the merits, Abiseid's position was badly mistaken. On the other hand, consideration of the ability to pay, which is usually not a significant factor in ERISA cases, weighs against an award of attorneys' fees, especially if the Court considers only the assets of the plan or

6

the income stream of the professional association apart from the salary paid to Dr. Abiseid (which is not excessive).  That McNeill sought to recover only for herself, not for others, and did not seek resolution of an important ERISA legal issue also weighs against an award.

Finally, there is the odd circumstance, not contemplated by the *Westerhaus* factors, that McNeil recovered substantially more than she requested when this lawsuit was filed.  McNeil demanded $58,887 plus interest at the rate of 5% per annum since July 6, 2002, and her brief to this Court in 2004 argued for that amount as the amount owed to her.  If Abiseid had paid $58,887 to her on July 6, 2002, and if she had earned 5% interest on that amount to date, she now would have in the neighborhood of $80,000.  She has recovered, instead, more than $137,000, or approximately $57,000 more than the amount she claimed before the appeal to the Eighth Circuit.  To say the same thing from the standpoint of Abiseid, Abiseid has already paid at least $57,000 more than the amount that McNeil sought before the appeal, which is to say that he lost $57,000 plus his own attorneys' fees by not paying McNeil the amount she claimed before the appeal to the Eighth Circuit.

Consideration of the factors discussed above has led the Court to the conclusion that this is not a case in which attorneys' fees should be awarded.  The issue of the ability to pay weighs heavily in this case, especially compared to the typical ERISA case.  The funds of the retirement plan have been substantially depleted, and the net income of the plan administrator is modest at best.  Therefore, the motion for an award of attorneys' fees DENIED.  Document #65.

IT IS SO ORDERED this 6th day of October, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

7